LODGED

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

2019 FEB -1 PM 3:03

for the

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

Central District of California

BY

FILED
CLERK, U.S. DISTRICT COURT
FEB - 1 2019
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION BY DEPUTY

United States of America

v.

Sergio J. Lopez de Tirado,

Defendant(s)

ED19-0056M

Case No.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of December 21, 2018 in the county of Riverside in the Central District of California, and Jan 30, 2019 ~~and San Bernardino County~~ the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 26 U.S.C. § 5861(d) | Possession of Unregistered National Firearms Act Weapons |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
*Complainant's signature*

Joseph M.G. Nazareno, Special Agent ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: FEB - 1 2019

SHERI PYM
*Judge's signature*

City and state: Riverside, California

Hon. Sheri Pym, U.S. Magistrate Judge
*Printed name and title*

AUSA: Reema El-Amamy 213-894-0552

COUNT ONE

[26 U.S.C. § 5861(d)]

On or about December 21, 2018, in Riverside County, within the Central District of California, defendant SERGIO J. LOPEZ DE TIRADO ("LOPEZ DE TIRADO") knowingly possessed a firearm, as defined in Title 26, United States Code, Section 5485(a), namely, a CMMG Incorporated, Model - MK9, 9mm semiautomatic short-barreled rifle, bearing serial number BNG00474, which defendant LOPEZ DE TIRADO knew to be a rifle having a barrel of less than 16 inches in length, and which had not been registered to defendant LOPEZ DE TIRADO in the National Firearms Registration and Transfer Record as required by Chapter 53, Title 26, United States Code.

COUNT TWO

[26 U.S.C. § 5861(d)]

On or about December 21, 2018, in Riverside County, within the Central District of California, defendant SERGIO J. LOPEZ DE TIRADO ("LOPEZ DE TIRADO") knowingly possessed firearms, as defined in Title 26, United States Code, Section 5485(a), and Title 18, United States Code, Section 921(a)(24), namely, two silencers bearing no serial numbers, which defendant LOPEZ DE TIRADO knew to be silencers, and which had not been registered to defendant LOPEZ DE TIRADO in the National Firearms Registration and Transfer Record as required by Chapter 53, Title 26, United States Code.

COUNT THREE

[26 U.S.C. § 5861(d)]

On or about ~~December 21, 2018~~ Jan 30, 2019, in ~~Riverside~~ ~~San Bernardino~~ Riverside County, within the Central District of California, defendant SERGIO J. LOPEZ DE TIRADO ("LOPEZ DE TIRADO") knowingly possessed a firearm, as defined in Title 26, United States Code, Section 5485(a), namely, an AR-15 style assault rifle, with no serial number, which defendant LOPEZ DE TIRADO knew to be a rifle having a barrel of less than 16 inches in length, and which had not been registered to defendant LOPEZ DE TIRADO in the National Firearms Registration and Transfer Record as required by Chapter 53, Title 26, United States Code.

# AFFIDAVIT

I, Joseph M.G. Nazareno, being duly sworn, hereby depose and say:

## BACKGROUND

1. I am a Criminal Investigator, Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since January 2017. I am currently assigned to the ATF Riverside Field Office in Riverside, California. I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and, therefore, I am empowered by law to conduct investigations and make arrests for the offenses enumerated within the United States Code. As an SA for ATF, my duties include the investigation of violations of federal firearms, explosives, and narcotics laws. As part of my training, I attended the Criminal Investigator and Special Agent Basic Training Academies for ATF in Glynco, Georgia, for approximately 26 weeks. I regularly refer to state and federal firearms and narcotics laws and regulations during the course of my duties. Prior to working for the ATF, I was employed as a United States Probation and Pretrial Services Officer in Milwaukee, Wisconsin, for two years. In that capacity, I supervised individuals who were both alleged to have committed, and those convicted of committing federal crimes, including offenses related to firearms, controlled substances, and

financial fraud. I also worked as a United States Probation Officer in Memphis, Tennessee, for four years, as a presentence investigator and as a supervision officer. During this time in Memphis, I also served as a certified Firearms Instructor, a Defensive Tactics Instructor, and a Search Enforcement Team Member.

**PURPOSE OF AFFIDAVIT**

2. This affidavit is made in support of a criminal complaint against and an arrest warrant for SERGIO J. LOPEZ DE TIRADO ("LOPEZ DE TIRADO") for violations of Title 26, United States Code, Sections 5861(d): Possession of Unregistered National Firearms Act ("NFA") Weapons. Specifically:

a. On or about December 21, 2018, LOPEZ DE TIRADO knowingly possessed a firearm, as defined in Title 26, United States Code, Section 5485(a), namely, a CMMG Incorporated, Model - MK9, 9mm semiautomatic short-barreled rifle, bearing serial number BNG00474, which defendant LOPEZ DE TIRADO knew to be a rifle having a barrel of less than 16 inches in length, and which had not been registered to defendant LOPEZ DE TIRADO in the National Firearms Registration and Transfer Record as required by Chapter 53, Title 26, United States Code.

b. On or about December 21, 2018, LOPEZ DE TIRADO knowingly possessed firearms, as defined in Title 26, United States Code, Section 5485(a), and Title 18, United States Code,

Section 921(a)(24), namely, two silencers bearing no serial numbers, which defendant LOPEZ DE TIRADO knew to be silencers, and which had not been registered to defendant LOPEZ DE TIRADO in the National Firearms Registration and Transfer Record as required by Chapter 53, Title 26, United States Code.

c. On or about January 30, 2019, LOPEZ DE TIRADO knowingly possessed a firearm, as defined in Title 26, United States Code, Section 5485(a), namely, an AR-15 style assault rifle, with no serial number, which defendant LOPEZ DE TIRADO knew to be a rifle having a barrel of less than 16 inches in length, and which had not been registered to defendant LOPEZ DE TIRADO in the National Firearms Registration and Transfer Record as required by Chapter 53, Title 26, United States Code.

3. Unless otherwise stated, the facts set forth in this affidavit are based upon my personal observations; my training and experience; and oral and written reports about this investigation, which has been reported to me by federal agents and other law enforcement agencies either directly or indirectly. This affidavit is intended to show that there is sufficient probable cause for the requested complaint and arrest warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless otherwise noted, when I assert that a statement was made, I have either heard the statement directly, or the statement was reported to me by

another law enforcement officer, either directly or in a written report. All statements described herein are relayed in substance and in part only and all dates are approximate.

**PROBABLE CAUSE**

4. Based on my review of law enforcement reports, as well as my own observations and knowledge of the investigation, I am aware of the following:

a. On December 21, 2018, at about 12:15 a.m., Riverside County Sheriff's Office ("RSO") Deputy Martinez was working uniformed patrol in the City of Norco, and was driving a marked black and white RSO patrol vehicle. He responded to the area of 2nd Street and Hammer Avenue in reference to a call for service. It was reported that a theft suspect in a black sports utility vehicle was seen driving westbound on 2nd Street from Hammer Avenue.

b. Deputy Martinez checked the area of 2nd Street and South Four Wheel Drive, and noticed a black or dark gray colored Dodge pick-up truck parked on the north side of 2nd Street west of South Four Wheel Drive. The truck was parked on the north side of 2nd Street, blocking a concrete driveway near the southwest corner of a trucking yard. The engine did not appear to be running and the front driver side and passenger side doors were both wide open.

c. Deputy Martinez has been employed with the RSO as a deputy sheriff for over ten years. He has been assigned to patrol the City of Norco for over three years. He has been a drug recognition expert for approximately one year, and has had multiple under the influence investigations. Based on his training and experience and knowledge of the area, he suspected that the Dodge may have been involved in a crime. The location of the vehicle was within close proximity of two sports bars and one nightclub. Deputy Martinez has experience conducting several driving under the influence investigations and traffic collision investigations from patrons of those businesses. The immediate area had several closed businesses. Deputy Martinez has investigated multiple investigations during a similar timeframe where closed businesses were burglarized.

d. Deputy Martinez parked his patrol vehicle behind the Dodge and activated his spot light. Without activating his emergency lights, he exited the patrol vehicle and approached the Dodge on the driver side. He stood near the open driver side door and noticed that the driver's seat was empty. He looked inside and found a Hispanic male, later identified as LOPEZ DE TIRADO, sitting on the passenger seat. His head and upper body were slumped forward, with his hands resting on what appeared to be a pair of binoculars on his lap. Deputy Martinez called out to him, "Hey, you okay?" LOPEZ DE TIRADO did not

respond. Deputy Martinez requested Riverside County Fire and American Medical Response to the location for a possible medical emergency.

e. Deputy Martinez noticed suspicious looking electrical wires on the floorboard of the Dodge. Deputy Martinez suspected that the Dodge may be an unreported stolen vehicle. Without entering the vehicle, Deputy Martinez crouched down for a closer look and noticed a loaded Springfield 1911 .45 caliber handgun in plain view on the driver side floorboard. Deputy Martinez requested additional RSO deputies to the location.

f. Once additional deputies arrived, Deputy Martinez secured the handgun in the trunk of his patrol vehicle. He noticed an unknown Caucasian male, later identified as I.T., walking on the north side of 2nd Street towards the Dodge. Deputy Martinez stopped I.T., and asked him if he was in the Dodge and he said, "Yes." I.T. stated that he had the keys to the Dodge, and stated that he was going to drive his friend (LOPEZ DE TIRADO) home. Deputy Martinez noticed that I.T. had rapid speech and foul breath, and appeared anxious. He was fidgeting with his fingers and making quick hand gestures as he spoke. For his safety, Deputy Martinez told I.T. to place his hands behind his back and interlace his fingers while he checked him for weapons. Deputy Martinez noticed that I.T. had

involuntary hand tremors. I.T. began rubbing Deputy Martinez's hand with his thumbs. Deputy Martinez asked him why he was rubbing his hand, and I.T. told Deputy Martinez that he did not realize that he was doing that. Based on his training and experience, Deputy Martinez recognized that I.T. had several outward objective signs and symptoms of being under the influence of a controlled substance. Deputy Martinez detained I.T. in the back seat of the patrol vehicle for further investigation.

g. Deputy Martinez attempted to contact LOPEZ DE TIRADO at the open passenger door. Deputy Martinez detected a strong odor of burnt marijuana emitting from LOPEZ DE TIRADO's body. LOPEZ DE TIRADO remained unresponsive. Deputy Martinez checked the passenger side back door and it was unlocked. For his safety, Deputy Martinez opened the door to check for additional occupants, and none were found. Deputy Martinez noticed and immediately recognized a partially exposed KeyMod style rail for AR and other rifle systems.

h. Deputy Martinez attempted to wake LOPEZ DE TIRADO by calling his name and tapping him on his right elbow. Deputy Martinez removed the binoculars from his lap, and placed them on the dashboard. Deputy Martinez noticed that he had a citizens band ("CB") Radio under the glove box. LOPEZ DE TIRADO had a pocketknife in his right front pants pocket and a knife in a

sheath on his belt above his right rear pocket. Deputy Martinez removed the two knives and placed them on a toolbox in the bed of the Dodge. LOPEZ DE TIRADO opened his eyes and told Deputy Martinez that he was alright, and that he was retired from "Rialto PD." LOPEZ DE TIRADO had trouble keeping his eyes open, and his head kept nodding forward like he was unable to stay awake. Deputy Martinez instructed LOPEZ DE TIRADO to step out of the vehicle. LOPEZ DE TIRADO had trouble following the instructions, and Deputy Martinez assisted him out of the vehicle.

i. Deputy Martinez asked LOPEZ DE TIRADO if there were any weapons on him, and he said, "No." For his safety, Deputy Martinez conducted a pat down search on the outside of LOPEZ DE TIRADO's clothing. Deputy Martinez located a loaded 1911 handgun magazine with approximately eight live rounds of .45 caliber ammunition in LOPEZ DE TIRADO's right front pants pocket, as well as a knife in a sheath concealed inside his waistband on LOPEZ DE TIRADO's left side. Additionally, Deputy Martinez located a revolver with a chrome finish under LOPEZ DE TIRADO's left arm. Deputy Martinez placed LOPEZ DE TIRADO in handcuffs, and explained that it was for his safety, and, at this point, LOPEZ DE TIRADO was not under arrest. Deputy Martinez asked LOPEZ DE TIRADO if he was supposed to be carrying a concealed weapon, and LOPEZ DE TIRADO laughed.

j. Deputy Martinez located an object that resembled a hand grenade in the holster underneath LOPEZ DE TIRADO's left arm. Deputy Martinez asked LOPEZ DE TIRADO what the device was, and he said, "That's for airsoft." Deputy Martinez placed the device on top of the toolbox in the bed of the Dodge. Deputy Martinez then contacted the RSO Hazardous Device Team ("HDT") to respond to the scene, as he believed the destructive device was a live explosive.

k. Deputy Martinez found an additional 1911 handgun magazine loaded with approximately eight live rounds of .45 caliber bullets in a magazine pouch on LOPEZ DE TIRADO's right shoulder. Deputy Martinez asked LOPEZ DE TIRADO if he had any firearms in the Dodge that was registered to LOPEZ DE TIRADO, and he said, "My wife's 9mm might be in there." Prior to placing LOPEZ DE TIRADO in the backseat of the patrol vehicle, Deputy Martinez asked if he could take the object out of LOPEZ DE TIRADO's left front pants pocket and he said, "Sure, go ahead." Deputy Martinez found one clear plastic baggy with a green leafy substance and one clear plastic baggy that contained a white crystalline substance, which, based on his training and experience, Deputy Martinez believed to be marijuana and methamphetamine.

l. During the encounter, Deputy Martinez noticed that LOPEZ DE TIRADO had a white pasty film in the corners of

his lips and had trouble keeping his eyes open. Under the light of a flashlight, Deputy Martinez noticed that LOPEZ DE TIRADO had slowed reaction to light and dilated pupils, foul breath, and, at times, he slurred his words. Deputy Martinez noticed that LOPEZ DE TIRADO, at times, had trouble answering simple questions and appeared disoriented. Based on his training and experience, and from conversations with other law enforcement officers, Deputy Martinez recognized that LOPEZ DE TIRADO had outward objective signs and symptoms of being under the influence of a combination of illicit drugs.

m. RSO Deputy Fisk checked the perimeter of the trucking yard for evidence of a crime. Deputy Martinez checked the Dodge for additional weapons and took digital photographs with his patrol camera. He located a black-colored handgun underneath the front passenger seat where LOPEZ DE TIRADO was found sitting. The handgun appeared to be loaded with a magazine. Deputy Martinez visually inspected the rifle found on the backseat and determined that it was a loaded AR-type rifle with a suppressor device attached to the end of the barrel. The weapon had a magazine well, the selector switch was on safe and the bolt was in the forward position, which indicated that it may be loaded. There appeared to be several high-capacity magazines, which held over ten rounds on the backseat with the

rifle, in plain view. Deputy Morales checked the binoculars and determined that they were night-vision goggles.

n. Deputy Martinez returned to his patrol vehicle and checked the Springfield 1911. He determined that it had a magazine inserted with approximately eight rounds of uniquely designed ammunition with one round in the chamber. The rounds were hollow-pointed. Deputy Martinez and another RSO Deputy transported LOPEZ DE TIRADO and I.T. to the Norco City Hall Sub-Station in separate vehicles for further investigation and evaluation. Deputy Martinez returned to the scene and started a critical incident log. RSO Deputy Esquibel and RSO Investigator Contreras responded to the scene, where Deputy Martinez briefed them on the findings. RSO HDT responded to the scene and evaluated the device. It was determined that the device was an improvised explosive device, and was detonated and made safe.

o. While at the station, Deputy Martinez asked LOPEZ DE TIRADO to participate in a drug influence evaluation and he refused. LOPEZ DE TIRADO stated that he was currently taking multiple prescribed pain medications and Xanax. Deputy Martinez asked LOPEZ DE TIRADO if he would volunteer a blood draw for analysis, and he refused.

p. On Friday, December 21, 2019, at approximately 7:00 a.m., RSO Investigator Corey was assigned to conduct follow up investigation regarding LOPEZ DE TIRADO. After receiving an

incident briefing, Investigatory Corey instructed Investigator Contreras to complete search warrants for LOPEZ DE TIRADO's vehicle and residence. A search warrant for LOPEZ DE TIRADO's vehicle and residence were signed by the Honorable Judge John D. Malloy. LOPEZ DE TIRADO's vehicle was searched by explosives experts with RSO HDT, and was rendered safe. That search yielded multiple firearms, including an AR-type assault rifle with a silencer and bipod. LOPEZ DE TIRADO's vehicle was transported back to the Jurupa Valley Station under the supervision of RSO Investigation Peters. The vehicle was secured in an evidence bat at the station, and was processed by RSO Investigator Merrill. Investigator Merrill located multiple rifles, shotguns and handguns, most of which did not have serial numbers. Investigator Merrill also located twenty bullet cartridges of .223 caliber tracer ammunition. In addition to the tracer ammunition, Investigator Merrill located eight homemade destructive devices and several green "pineapple" style plastic grenade bodies, which were consistent with the device Deputy Martinez recovered and that HDT detonated on-scene. All of the firearms Investigator Merrill recovered were loaded, including the silenced AR-type rifle, an AK-47 and a short-barreled 9mm AR-type rifle. Each weapon had a high-capacity magazine inserted. In total, ten loaded high-capacity magazines were recovered from the truck.

q. RSO Investigator Sanchez supervised the processing of the search warrant service and search at LOPEZ DE TIRADO's residence at **** Rolling Hills Drive, in the City of Corona. Law enforcement recovered twenty-six additional destructive devices, and four, thirty-round high-capacity magazines for an AK-47.

5. On December 23, 2018, I queried LOPEZ DE TIRADO and I.T. in the National Firearm Registration and Transfer Record to determine if LOPEZ DE TIRADO or I.T. in order to determine whether they had valid registrations pursuant to the NFA. On December 26, 2018, I determined that there was no NFA record for LOPEZ DE TIRADO's or I.T.

6. On December 28, 2018, I retrieved property from LOPEZ DE TIRADO's vehicle. Among the items retrieved were: (1) a suspected silencer attached to RSO item no. 2114626, which was a Warrior One, Model - War 1 Multi-Cal, .223 caliber semiautomatic rifle, bearing serial no. 0630; (2) another suspected silencer - RSO item no. 2114647; and (3) a CMMG Incorporated, Model - MK9, 9mm semiautomatic short-barreled rifle (RSO item no. 2114641). I am aware, based on my review of a report prepared by Firearms Enforcement Officer Ronald K. Davis that both silencers are "firearms" as defined in 18 U.S.C. § 921(a)(3)(C) and 26 U.S.C. § 5845(a)(7), and that neither silencer had NFA manufacturer's

marks of identification or serial numbers as required by 26 U.S.C. § 5842.

7. On December 28, 2018, I measured the barrel length of the CMMG Incorporated, Model – MK9, 9mm semiautomatic short-barreled rifle (RSO item no. 2114641) found in the backseat of LOPEZ DE TIRADO's vehicle. I determined the barrel length to be 11.25 inches with a barrel attachment and 8.5 inches without the attachment. I am aware that, in either configuration, the firearm meets the definition of a short-barreled rifle as defined by Title 26, United States Code, Section 5845(a)(3). On January 4, 2019, the firearm was test fired at the Riverside Police Department firing range located at 8181 Lincoln Avenue in Riverside, California. The firearm functioned as designed.

8. Based on my review of law enforcement reports, as well as my own observations and knowledge of the investigation, I am aware of the following:

a. On January 30, 2019 at approximately 1:00 a.m., California Highway Patrol ("CHP") Officer Wozny received a call from the supervisor overseeing a construction detail in the area of I-15 Southbound between Hidden Valley Parkway and SR-91. The supervisor stated that there was a suspicious vehicle stopped by his equipment on the right shoulder of the I-15 Northbound north of Ontario Avenue. Upon arrival at that location, Officer Wozny saw a gray Dodge Ram facing the wrong way on the right shoulder,

backed up to where the equipment was located. Officer Wozny saw the vehicle start to pull forward, and Officer Wozny stopped his patrol vehicle directly in front of the vehicle and activated the vehicle overhead red and blue lights. Officer Wozny observed two males in the vehicle. Officer Wozny approached the right side of the vehicle and contacted the driver, later identified by his California Identification card as LOPEZ DE TIRADO.[1] LOPEZ DE TIRADO provided Officer Wozny with his California Identification Card and stated that he did not have his license with him. The passenger stated that he did not have any identification. Officer Wozny asked LOPEZ DE TIRADO why he was stopped on the shoulder, and LOPEZ DE TIRADO stated that he needed to use the restroom, and was going to use the portable bathroom. Officer Wozny conducted a check of LOPEZ DE TIRADO's license status and was advised by CHP dispatch that LOPEZ DE TIRADO's license was suspended. Officer Wozny issued LOPEZ DE TIRADO a citation, and requested a tow truck for an impound pursuant to California Vehicle Code Section 14602.6. LOPEZ DE TIRADO told Officer Wozny that he had just purchased the vehicle, and that it belonged to him, and stated that he did not know that his license was suspended. Upon completing the inventory of LOPEZ DE TIRADO's vehicle, Officer Wozny located an

[1] LOPEZ DE TIRADO was on bond on state firearm charges on this date.

AR-type assault rifle under the folding right rear seat. Officer Wozny observed that the rifle appeared to be a short-barreled rifle with no serial numbers or markings. The rifle had what appeared to be a 30-round magazine inserted into the magazine as well, and secured to the rifle. Officer Wozny removed the magazine from the weapon and observed the magazine was loaded with several rounds. Officer Wozny pulled the charging handle on the weapon, and observed a round of ammunition loaded into the weapon, indicating that the weapon was loaded and a round had been chambered. Officer Wozny located a second high-capacity magazine with several rounds of ammunition loaded into it, placed directly next to the assault rifle under the seat. Each of the magazines had been loaded with 28 rounds of .223 ammunition, totaling 57 rounds including the round located in the chamber. On February 1, 2019, I measured the barrel length of the AR-15 style assault rifle bearing no serial number. I determined the barrel length to be 8 inches.

//

//

//

//

//

//

CONCLUSION

9. Based on the foregoing facts and opinions, and on my training and experience, I believe that there is probable cause to believe that LOPEZ DE TIRADO violated Title 26, United States Code, Sections 5861(d): Possession of Unregistered National Firearms Act Weapons.

/S/

Joseph M.G. Nazareno
Special Agent - ATF

Subscribed and sworn to before me
This 1st day of February, 2019

SHERI PYM

United States Magistrate Judge