HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
KIM SAVO (Bar No. 223197)
(E-Mail: Kim_Savo@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
SERGIO LOPEZ DE TIRADO

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

SERGIO LOPEZ DE TIRADO,

Defendant.

Case No. 19-48-FMO

**DEFENDANT LOPEZ DE TIRADO'S POSITION RE SENTENCING**

Defendant, Sergio Lopez de Tirado, by and through his counsel of record, Deputy Federal Public Defender Kim Savo, respectfully requests that the Court sentence him to no more than a 2-year term of imprisonment.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: October 2, 2019

By *\/s/ Kim Savo*

KIM SAVO
Deputy Federal Public Defender
Attorney for Sergio Lopez de Tirado

# I. MEMORANDUM

## A. Mr. Lopez Is Unlikely to Recidivate.

There are three reasons why the Court can be assured that Sergio Lopez de Tirado will not recidivate: he always takes responsibility for his children; he has a history of remaking himself; he has the unwavering support of his wife. *See* Jeanette Lopez de Tirado, Letter, attached as Exhibit A.

When his high school girlfriend called him in Florida from California to say she was pregnant, even at seventeen, Mr. Lopez didn't dodge responsibility. Although he was only a teen, Mr. Lopez insisted on trying to forge a relationship and raise their child. The immature relationship did not survive. But the youthful Mr. Lopez took sole custody and responsibility for his daughter. As an adult, he fought a bitter and protracted custody battle to obtain full custody of one of his other daughters, and gained joint custody of another. He legally adopted his current wife's adult son, and helps parent his four step-children. Mr. Lopez is a devoted father. Other than working, he has focused his time almost exclusively on parenting. *See* Exhibit A. Mr. Lopez feels driven to be the involved and engaged father he did not have himself.

When as a teen-aged, single father Mr. Lopez found it too difficult to support his family making minimum wage, he joined a training program and became a police officer. When he lost his job as a police officer, he was undeterred. He went to community college and taught junior high school. He continued to teach while he completed his Bachelor's Degree. Continually, he sought to improve himself, first becoming a private investigator, then graduating from law school and starting his own law practice.

Mr. Lopez will be disbarred as a result of this conviction. Rather than despairing, he and his wife are already planning the business they will start together upon his release. *See* Sergio Lopez de Tirado, Letter, attached as Exhibit B. Specifically, their goal is to create a document preparation service to help poor people

unable to hire a lawyer identify the correct forms and prepare them for *pro se* representation.

Mrs. Lopez is the rock who provides stability to her husband. She will not tolerate future misconduct by him. She speaks to him daily, and has helped him remain positive and focused on repairing the harm he has caused.

**B. The Collateral Consequences of His Conviction Are a Significant Deterrent, Making a Lengthy Prison Term Unnecessary.**

Losing his law license and a 15-year career as a result of becoming a felon have impressed upon Mr. Lopez the gravity of his offense conduct. Notwithstanding his plans for the future, he knows his conduct has diminished his earning capacity for his family.

Because he is a former police officer, he has spent pretrial detention in administrative segregation, locked down nearly 24-hours a day. The Bureau of Prisons is likely to continue to house him in segregation after sentencing. For someone like Mr. Lopez with a history of depression, long periods of isolation are detrimental to mental health.

Mr. Lopez he has separated himself from the children for whom he fought so hard to gain custody. The shame he feels is only matched by his commitment to repair those relationships.

Finally, there is a genuine risk that the grandmother who raised him will die while he is incarcerated. The prospect haunts him.

**C. Methamphetamine Induced Paranoia and Delusions Precipitated the Offense Conduct.**

Mr. Lopez committed the instant offense because he abused methamphetamine, which caused paranoia and delusions. Herniated cervical disks caused him exceptional pain, for which he initially took prescription opiates. He fell down the well of addiction, turning to methamphetamine when doctors withheld increasingly large doses of prescription pain killers. In his law practice, Mr. Lopez had represented individuals

who identified as members of the Hells Angels. Later in time, he also represented individuals who associated with the rival Mongols motorcycle gang. A remark by his methamphetamine dealer about the dangers of having represented rivals was amplified by the drugs, until Mr. Lopez believed that at any moment someone was coming to kill him or his wife. He armed himself as if for battle. He hardly slept. As his wife attests, he became less and less himself and more and more paranoid and delusional, accusing her of having an affair, being a hacker, and compromising their home security system.

These symptoms of methamphetamine abuse are well-documented. Stimulant-Induced Psychotic Disorder describes the presence of delusions and/or hallucinations that develop during or soon after substance intoxication or withdrawal and cause clinically significant distress or impairment in social, occupational, or other important areas of functioning. *See. e.g.*, Glasner-Edwards, S., & Mooney, L. J. Methamphetamine psychosis: epidemiology and management. CNS DRUGS, 28(12) (2014), at 1115–1126. Symptoms are often brief, resolving shortly after the causative drug is cleared, but psychosis triggered by amphetamines, cocaine, or PCP may persist for many weeks. *See* https://www.merckmanuals.com/professional/psychiatric-disorders/schizophrenia-and-related-disorders/substance-medication%E2%80%93induced-psychotic-disorder. Amphetamine "users are at particularly high risk of experiencing precipitated or exacerbated psychotic symptoms, with an estimated prevalence of psychosis that is 11 times higher than the general population. Compared with other substances, methamphetamine is highly neurotoxic, and its use can lead to long-term damage, with concomitant deleterious effects on cognition." Hermens, D., et al. Amphetamine psychosis: a model for studying the onset and course of psychosis. MED. J. AUSTRALIA 190 (4) (Feb. 16, 2009), S22-S25. "ATS [amphetamine-type stimulant] use increases the likelihood of experiencing psychotic symptoms, and the clinical characteristics of ATS-related psychosis can be indistinguishable from acute paranoid schizophrenia ..." *Id.* at S22.

The most effective means of deterring future criminal conduct by Mr. Lopez and protecting the community is to ensure that he receives both mental health and substance abuse treatment while in custody and upon release.

## II. CONCLUSION

"[S]entencing is an art, not to be performed as a mechanical process but as a sensitive response to a particular person who has a particular personal history and has committed a particular crime." *United States v. Harris*, 679 F.3d 1179, 1183 (9th Cir. 2012). The Supreme Court requires individualized sentencing, affirming "the principle that 'the punishment should fit the offender and not merely the crime.'" *Pepper v. United States*, 131 S.Ct. 1229, 1240 (2011) (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)); *see also Miller v. Alabama*, 132 S.Ct. 2455 (2012) ("punishment for crime should be graduated and proportioned to both the offender and the offense").

Both of Mr. Lopez's prior convictions have been expunged under California state law. PSR ¶¶39-40. He has never been to prison. He has a long history of legitimate employment. The offense is a serious one; however, but for the deleterious effects of methamphetamine abuse, Mr. Lopez would not have committed the crime. Mr. Lopez recognizes that he must serve a term of imprisonment. More than two years would be greater than necessary to serve the purposes of sentencing. A shorter prison term and a longer term of supervised release will ensure that Mr. Lopez feels a punitive sanction while simultaneously avoiding deterioration of his mental health and ensuring substance abuse treatment, which is more effective in the community than in a custodial setting.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: October 2, 2019

By *<u>/s/ Kim Savo</u>*

KIM SAVO
Deputy Federal Public Defender
Attorney for Sergio Lopez de Tiradow